| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| ☐ *Individual appearing without counsel*<br>☐ *Attorney for:* | |

| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
|---|---|
| In re:<br><br><br>Debtor(s). | CHAPTER:<br><br>CASE NO.:<br><br>DATE:<br>TIME:<br>CTRM:<br>FLOOR: |

# NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: _____ )
### (Real Property)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**  ☐ **255 East Temple Street, Los Angeles**    ☐ **411 West Fourth Street, Santa Ana**

   ☐ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**

   ☐ **3420 Twelfth Street, Riverside**

3. a. ☐ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

   ☐ at the hearing    ☐ at least _____ court days before the hearing.

   (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

   (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 2 of* ____          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|-------|---------------|----------|
|       | Debtor(s). | CASE NO.: |

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.


Dated:


_____
*Print Law Firm Name (if applicable)*


/s/ Margaret E. Garms
_____          _____
*Print Name of Individual Movant or Attorney for Movant*          *Signature of Individual Movant or Attorney for Movant*

*December 2009*                                                **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 3 of ____*

**F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## (MOVANT: _____ )

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

   *Street Address:*
   *Apartment/Suite No.:*
   *City, State, Zip Code:*

   Legal description or document recording number (including county of recording):

   ☐ See attached continuation page.

2. **Case History:**

   a. ☐ A voluntary ☐ An involuntary   petition under Chapter   ☐ 7   ☐ 11   ☐ 12   ☐ 13
      was filed on *(specify date)*:

   b. ☐ An Order of Conversion to Chapter   ☐ 7   ☐ 11   ☐ 12   ☐ 13
      was entered on *(specify date)*:

   c. ☐ Plan was confirmed on *(specify date)*:

   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years. See attached Declaration.

3. **Grounds for Relief from Stay:**

   a. ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

   (1) ☐ Movant's interest in the Property is not adequately protected.

      (a) ☐ Movant's interest in the collateral is not protected by an adequate equity cushion.

      (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).

      (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.

   (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

      (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

      (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

      (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.

      (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 4 of* ____                    **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

(3) ☐ *(Chapter 12 or 13 cases only)*

    (a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.

    (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

(4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.
    Debtors are receiving no rent from the Property and are not occupying the Property.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☐ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b. ☐ Other Declaration(s) are also attached in support of this Motion.

c. ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

d. ☐ Other evidence *(specify)*:

6. ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☐ Additional provisions requested:

    a. ☐ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b. ☐ That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 5 of* ____          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

      d.   ☐  For other relief requested, see attached continuation page.

4.   If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.


Dated:                                    Respectfully submitted,


_____
*Movant Name*


_____
*Firm Name of Attorney for Movant (if applicable)*


By:  /s/ Margaret E. Garms _____
*Signature*


Name: _____
*Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 6 of* ____    **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

## REAL PROPERTY DECLARATION
## (MOVANT: _____ )

I, _____ , declare as follows:
*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

    ☐ I am the Movant and owner of the Property.

    ☐ I manage the Property as the authorized agent for the Movant.

    ☐ I am employed by Movant as *(state title and capacity)*:

    ☐ Other *(specify)*:

2.  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.  a.  The address of the Property that is the subject of this Motion is:

    *Street Address:*
    *Apartment/Suite No.:*
    *City, State, Zip Code:*

    b.  The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit _____.

    ☐ See attached page.

4.  Type of property *(check all applicable boxes)*:

    a.  ☐ Debtor's(s') principal residence   b.  ☐ Other single family residence

    c.  ☐ Multi-unit residential   d.  ☐ Commercial

    e.  ☐ Industrial   f.  ☐ Vacant land

    g.  ☐ Other *(specify)*:

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 7 of* ____                    **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

5.  Nature of Debtor's(s') interest in the Property:

   a.  ☐  Sole owner

   b.  ☐  Co-owner(s) *(specify)*:

   c.  ☐  Lien holder *(specify)*:

   d.  ☐  Other *(specify)*:

   e.  ☐  Debtor(s)   ☐  did   ☐  did not   list the Property in the Schedules filed in this case.

   f.  ☐  Debtor(s) acquired the interest in the Property by   ☐  grant deed   ☐  quitclaim deed   ☐  trust deed

   The deed was recorded on:

6.  Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $_____ | $_____ | $_____ |
| b. | Accrued Interest: | $_____ | $_____ | $_____ |
| c. | Late Charges | $_____ | $_____ | $_____ |
| d. | Costs (Attorney's Fees,  Other Costs): | $_____ | $_____ | $_____ |
| f. | Advances (Property Taxes, Insurance); prepmt. penalty | $_____ | $_____ | $_____ |
| g. | TOTAL CLAIM as of _____: | $_____ | $_____ | $_____ |

   h.  ☐  Loan is all due and payable because it matured on *(specify date)*:

7.  Movant holds a   ☐  deed of trust   ☐  judgment lien   ☐  other *(specify)*
   that encumbers the Property.

   a.  A true and correct copy of the document as recorded is attached as Exhibit _____.

   b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _____.

   c.  ☐  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8.  Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

   a.  Current interest rate:

   b.  Contractual maturity date:

   c.  Amount of current monthly payment:  $

   d.  Number of PREPETITION payments that have come due and were not made:  _____.  Total amount: $_____

   e.  Number of POSTPETITION payments that have come due and were not made:  _____.  Total amount: $_____

   f.  Date of POSTPETITION default:

   g.  Last payment received on the following date:

   h.  Notice of default recorded on the following date:

   i.  Notice of sale recorded on the following date:

   j.  Foreclosure sale originally scheduled for the following date:

   k.  Foreclosure sale currently scheduled for the following date:

   l.  Foreclosure sale already held on the following date:

   m.  Trustee's deed on sale already recorded on the following date:

   n.  Future payments due by time of anticipated hearing date *(if applicable)*:
   An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter.  If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.
   following

9.  Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 8 of* ____         **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

10. ☐ *(Chapter 7 and 11 cases only)*:  The fair market value of the entire Property is $_____, established by:

   a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit _____.

   b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

   c. ☐ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit _____.

   d. ☐ Other *(specify)*:

11. ☐ The fair market value of the Property is declining based on/due to: _____

                                                   _____

12. ☐ **Calculation of equity in Property:**

   a. Based upon   ☐ preliminary title report   ☐ Debtor's(s') admissions in the schedules filed in this case,  the Property is
                       subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor(s) (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | | | |
| 2nd Deed of Trust: | | | |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |
| **TOTAL DEBT:**  $ | | | |

   b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit _____, and consists of:

       ☐ Preliminary title report

       ☐ Relevant portions of Debtor's(s') Schedules as filed in this case

       ☐ Other *(specify)*:

   c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $_____ (§ 362(d)(2)(A)).

   d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $_____ (§ 362(d)(1)).

   e. Estimated costs of sale:  $_____      (Estimate based upon _____% of estimated gross sales price)

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

   a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
       Confirmation hearing currently scheduled for (or concluded on) the following date:
       Plan confirmed on the following date *(if applicable)*:

   b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| | | | | |
|---|---|---|---|---|
| *(Number of)* _____ payment(s) due at $_____ each | = | $_____ |
| *(Number of)* _____ payment(s) due at $_____ each | = | $_____ |
| *(Number of)* _____ late charge(s) at  $_____ each | = | $_____ |
| *(Number of)* _____ late charge(s) at  $_____ each | = | $_____ |

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 9 of ____*          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NO.: |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:          $_____
      (See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**   $_____

d.   Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

| *(Number of)* _____ payment(s) due at $_____ each | = | $_____ |
|---|---|---|
| *(Number of)* _____ payment(s) due at $_____ each | = | $_____ |
| *(Number of)* _____ late charge(s) at $_____ each | = | $_____ |
| *(Number of)* _____ late charge(s) at $_____ each | = | $_____ |

e.   Postconfirmation advances or other charges due but unpaid:          $_____
      (See attachment for details of type and amount.)

**TOTAL POSTCONFIRMATION DELINQUENCY:**          **$_____**

f.   ☐   The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.

g.   ☐   See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan *(attach Court Form F 4001-1M.13).*

14.   ☐   Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15.   ☐   The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16.   ☐   See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17   ☐   The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

a.   ☐   The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval.  See attached continuation page for facts establishing the scheme.

b.   ☐   Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
      1.   Case Name:
            Case Number:                              Chapter:
            Date Filed:                    Date Dismissed:                    Date Discharged:
            Relief from stay re this property   ☐ was   ☐ was not  granted.
      2.   Case Name:
            Case Number:                              Chapter:
            Date Filed:                    Date Dismissed:                    Date Discharged:
            Relief from stay re this property   ☐ was   ☐ was not  granted.

      3.   ☐   See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐   See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 10 of* ____    **F 4001-1M.RP**

| In re                                (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| John Michael Licursi and | |
| Susan Annette Licursi, aka Hartshorn Marshall,                    Debtor(s). | CASE NO.: 1:10-bk-26168-GM |

18. ☐   Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

  a.  ☐   These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

  b.  ☐   Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

  c.  ☐   For other facts justifying annulment, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** March 4 _____ , 2011 , at Salt Lake City, Utah _____ *(city, state).*

Randy McDougal _____
*Print Declarant's Name*

_____
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                    **F 4001-1M.RP**

# Exhibit 1

EXHIBIT A

THE LAND REFERRED TO IN THIS POLICY IS SITUATED IN THE COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AND DESCRIBED AS FOLLOWS:

LOTS 5 AND 6 OF TRACT NO. 8551, IN THE CITY OF BURBANK,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 121, PAGES 19 AND 20, OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.

# **<u>Exhibit 2</u>**

This page is part of your document - DO NOT DISCARD

**06 1779306**

* FDT

D2T

^D47

^D30A

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**08/10/06 AT 08:00am**

## TITLE(S) :



L E A D    S H E E T

FEE                                                      D.T.T.

FEE $ 42-VV
DAF $ 6-        3+
C-20            8

CODE
20

CODE
19    NCPF Code 19   $ 24-

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

Description: Los Angeles,CA Document-Year.DocID 2006.1779306 Page: 1 of 9
Order: 4464931 Comment:

29

Equity Title

Record To:
Alliance Bank
100 Corporate Pointe, Ste 100
Culver City, CA 90230

06 1779306

FOR RECORDER'S USE ONLY

(1) John M. Licursi as trustee (1)

DEED OF TRUST    (2) Susan A. Licursi as trustee (2)

THIS DEED OF TRUST is dated July 27, 2006, among JOHN M. LICURSI and SUSAN A. LICURSI as Trustees of the JOHN AND SUSAN LICURSI 2006 TRUST DATED APRIL 13, 2006, whose address is 7801 W. BURBANK BOULEVARD, BURBANK, CA 91505 ("Trustor"); Alliance Bank, whose address is Media District Regional Office, 3601 W. Olive Avenue, Suite 506, Burbank, CA 91505 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Alliance Bank, A California Corporation, whose address is 100 Corporate Pointe, Culver City, CA 90230 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property ...

**Real Property** located in LOS ANGELES County, State of California:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 7801 W. BURBANK BOULEVARD, BURBANK, CA 91506. The Assessor's Parcel Number for the Real Property is 2438-025-006.

[Remaining body text heavily faded and illegible]

**DEED OF TRUST**
(Continued)

Loan No: 10400433

Page 2

Remain in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so, and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust.

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust.

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set out in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Description: Los Angeles,CA Document-Year.DocID 2006.1779306 Page: 3 of 06
Order: 4444931 Comment:

## DEED OF TRUST
(Continued)

Loan No: 704000403

Page 3

Defense of Title. Subject to the exception in the paragraph above, Trustee warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustee's title or the interest of Trustee or Lender under this Deed of Trust, Trustee shall defend the action at Trustee's expense. Trustee may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustee will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustee warrants that the Property and Trustee's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Trustee in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustee's Indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any proceeding in condemnation is filed, Trustee shall promptly notify Lender in writing, and Trustee shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustee may be the nominal party in such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustee will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustee shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustee shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustee which Trustee is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustee.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustee either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Trustee shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and the Personal Property. Trustee shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustee shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustee shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustee and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Trustee and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Trustee will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustee's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustee. Unless prohibited by law or Lender agrees to the contrary in writing, Trustee shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Trustee fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustee and at Trustee's expense. For such purposes, Trustee hereby irrevocably appoints Lender as Trustee's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

FULL PERFORMANCE. If Trustee pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustee under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustee suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustee a reasonable reconveyance fee at the time of reconveyance.

EVENTS OF DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

Payment Default. Trustee fails to make any payment when due under the Indebtedness.

Other Defaults. Trustee fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustee.

Compliance Default. Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

Default on Other Payments. Failure of Trustee within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Environmental Default. Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

Default in Favor of Third Parties. Should Trustee default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustee's property or

Description: Los Angeles, CA Document: Year.DocID 2006.1779306 Page: 4 of 9
Order: 4444931 Comment:

**DEED OF TRUST**
**(Continued)**

Loan No: 10400403                                                                                                   Page 4

Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Trustor's existence as a going business, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right to foreclose by judicial foreclosure in accordance with California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be

**DEED OF TRUST**
(Continued)

Loan No: 10400403

Page 5

and the. to a tender's sole so as the court may act, the instrument as attorneys' fees and that and upon any appeal, whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor will also pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of LOS ANGELES County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words

DEED OF TRUST
(Continued)

Loan No: 10400403                                                                                        Page 5

and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Alumax Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means JOHN AND SUSAN LICURSI 2006 TRUST and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Alumax Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated July 27, 2006 **in the original principal amount of $950,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Alumax Bank, A California Corporation, whose address is 100 Corporate Plaza, Culver City, CA 90230 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means JOHN AND SUSAN LICURSI 2006 TRUST.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

JOHN AND SUSAN LICURSI 2006 TRUST

By: _____
JOHN M. LICURSI, Trustee of JOHN AND SUSAN LICURSI 2006 TRUST

By: _____
SUSAN A. LICURSI, Trustee of JOHN AND SUSAN LICURSI 2006 TRUST

DEED OF TRUST
(Continued)

Loan No: 10400403

Page 7

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ }
}SS
COUNTY OF _Los Angeles_ }

On _8/7/2006_, 20___, before me, _Linda Trinh, Notary Public_, personally appeared JOHN M. LIDURBI, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _[signature]_

(Seal)

LINDA TRINH
Commission # 1528669
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2008

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ }
}SS
COUNTY OF _Los Angeles_ }

On _8/7/2006_, 20___, before me, _Linda Trinh, Notary Public_, personally appeared SUSAN A. LIDURBI, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _[signature]_

(Seal)

LINDA TRINH
Commission # 1528669
Notary Public - California
Los Angeles County
My Comm. Expires Nov 21, 2008

---

(DO NOT RECORD)

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____
By: _____
Its: _____

LaserPro, Ver. 5.36.00.04 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved.

06 1779306

Description: Los Angeles,CA Document-Year.DocID 2006.1779306 Page: 8 of 9
Order: 4444931 Comment:

## EXHIBIT "A"

LOTS 5 AND 6 OF TRACT NO. 8551, IN THE CITY OF BURBANK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 121, PAGES 19 AND 20, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

06 1779306

Description: Los Angeles,CA Document-Year.DocID 2006.1779306 Page: 9 of 9
Order: 4444932 Comment:

# Exhibit 3

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $950,000.00 | 07-27-2006 | 07-27-2016 | 10400403 | 1.e / 0003 | | 142 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  JOHN AND SUSAN LICURSI 2005 TRUST
1801 W. BURBANK BOULEVARD
BURBANK, CA 91506

**Lender:**  Alliance Bank
Media District Regional Office
3601 W. Olive Avenue
Suite 505
Burbank, CA 91505
(818) 972-1800

# 1146866-9001

**Principal Amount: $950,000.00**                                    **Date of Note: July 27, 2006**

**PROMISE TO PAY.** JOHN AND SUSAN LICURSI 2005 TRUST ("Borrower") promises to pay to Alliance Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Fifty Thousand & 00/100 Dollars ($950,000.00), together with interest on the unpaid principal balance from July 27, 2006, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:  60 monthly consecutive principal and interest payments in the initial amount of $7,362.27 each, beginning August 27, 2006, with interest calculated on the unpaid principal balances at an initial interest rate of 7.930%; 59 monthly consecutive principal and interest payments in the initial amount of $7,273.72 each, beginning August 27, 2011, with interest calculated on the unpaid principal balances at an interest rate based on the five (5) year Treasury Constant Maturity Rate (CMT) (currently 5.020%), plus a margin of 2.750%, resulting in an initial interest rate of 7.770%; and one principal and interest payment of $773,741.79 on July 27, 2016, with interest calculated on the unpaid principal balances at an interest rate based on the five (5) year Treasury Constant Maturity Rate (CMT) (currently 5.020%), plus a margin of 2.750%, resulting in an initial interest rate of 7.770%.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges.  The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 60 payments, the interest rate on this Note will be 7.930%.  Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the five (5) year Treasury Constant Maturity Rate (CMT) (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower.  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each five years.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 5.020%.  The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section.  Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream.  NOTICE:  Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.  Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following:  (A)  increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date,  (B)  increase Borrower's payments to cover accruing interest,  (C)  increase the number of Borrower's payments, and  (D)  continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00**.  Upon prepayment of this Note, Lender is entitled to the following prepayment fee:  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date the loan is funded and will not be subject to refund upon early payment (whether voluntary or as result of default), except as otherwise required by law.  Borrower may prepay all or any portion of the principal outstanding under this Note at any time upon 5 days prior written notice to Lender.  If this Note is prepaid, Borrower shall pay to Lender concurrently with such prepayment a prepayment premium equal to: (i) 5% on the declining then principal balance of this note if prepaid within the first year, (ii) 4% on the declining then principal balance of this note if prepaid within the second year, (iii) 3% on the declining then principal balance of this note if prepaid within the third year, (iv) 2% on the declining then principal balance of this note if prepaid within the fourth year, and (v) 1% on the declining principal balance of this note if prepaid within the fifth year.  Borrower may prepay an aggregate amount equal to 20% during any twelve (12) month period without a prepayment premium.  This Note shall be deemed to be prepaid if Borrower's aggregate prepayment exceeds 20% of the then outstanding principal balance of this Note as of the beginning of each twelve (12) month anniversary period.  Borrower acknowledges and agrees that the prepayment premium required hereunder is intended to compensate Lender for any lost interest resulting from the premature repayment of this Note.  Borrower further acknowledges and agrees that the amount of any prepayment premium calculated in accordance with this provision is reasonable under the circumstances existing on the date of this Note, and that it would be extremely difficult and impractical to fix Lender's actual loss arising out of the repayment of this Note before the maturity date hereof.  The prepayment premium calculated in accordance with this provision shall be presumed to be the actual loss incurred by Lender as a result of the premature repayment of this Note.  Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Alliance Bank, Media District Regional Office, 3601 W. Olive Avenue, Suite 505, Burbank, CA  91505.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $10.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 7.750 percentage points over the Index, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or

Pay To The Order Of:
Zions First National Bank
Without Recourse

*Alliance Bank*

Seller:

By: *[signature]*

Title:

Loan No: 10400403                     PROMISSORY NOTE
                                        (Continued)    # 1146866 -9081                     Page 2

a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated July 27, 2006, to a trustee in favor of Lender on real property located in LOS ANGELES County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in LOS ANGELES County, State of California.

(C) fixtures described in a Commercial Security Agreement dated July 27, 2006.

**BUSINESS LOAN AGREEMENT.** This Note is issued pursuant to, is entitled to the benefits of and is subject to the terms of that certain Business Loan Agreement dated July 27, 2006 (as the same may be amended, supplemented, modified, extended or restated from time to time, the "Business Loan Agreement"), between the Borrower and the Lender. The Business Loan Agreement contains provisions for acceleration of the maturity of this Note upon the happening of certain stated events.

**MAXIMUM LOAN AMOUNT.** The funding under this loan is restricted. The maximum outstanding loan amount under this, and any other loans for which Borrower is contingently liable, shall not exceed Alliance Bank's legal lending limit, less the amount of the participations sold to participating institutions.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Alliance Bank 100 Corporate Pointe Culver City, CA 90230.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

JOHN AND SUSAN LICURSI 2005 TRUST

By: _____                          By: _____
JOHN M. LICURSI, Trustee of JOHN AND SUSAN              SUSAN A. LICURSI, Trustee of JOHN AND SUSAN
LICURSI 2005 TRUST                                      LICURSI 2005 TRUST

LASER PRO Lending, Ver. 5.30.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - CA  C:\CFI\LPL\D20.FC  TR-434  PR-CMCLRE

ORIGINAL

Pay To The Order Of:
Zions First National Bank,
Without Recourse

Seller: _____

By: _____

Title: _____

# Exhibit 4

Mar 16 2005    4:42        P. 02

CERTIFIED A TRUE COPY OF THE ORIGINAL
DOCUMENT RECORDED 4-8-10
AS INSTRUMENT No. 20100473697
IN BOOK PAGE _____
OFFICIAL RECORDS Los Angeles
FIRST AMERICAN TITLE INSURANCE COMPANY
By MS

RECORDATION REQUESTED BY:

ZIONS FIRST NATIONAL BANK
ONE SOUTH MAIN STREET, SUITE 1400
SALT LAKE CITY, UT 84111

WHEN RECORDED MAIL TO:

ZIONS FIRST NATIONAL BANK
REAL ESTATE SECURITIZATION DEPARTMENT
ONE SOUTH MAIN STREET, SUITE 1400
SALT LAKE CITY, UT 84111

1146866-9001

## ASSIGNMENT OF DEED OF TRUST
## ASSIGNMENT OF ASSIGNMENT OF RENTS

This Assignment of Deed of Trust; Assignment of Assignment of Rents is dated this 28 day of March, 2008; between Alliance Bank (referred to below as "Assignor"), with a post office address of 100 Corporate Pointe, Culver City, CA 90230; and Zions First National Bank (referred to below as "Assignee"; whose address is One South Main Street, Suite 1400, Salt Lake City, UT 84111.

Deed of Trust; Assignment of Rents. John and Susan Licursi 2005 Trust dated April 13, 2005, trustor, granted to Alliance Bank, as trustee and as lender or beneficiary, the following described document(s) dated July 27, 2006, the ("Document(s)"), which have been recorded in Los Angeles County, State of California property as follows:

Deed of Trust recorded on 08/10/2006 in Los Angeles County, California as document # 06-1779306.

Assignment of Rents recorded on 08/10/2006 in Los Angeles County, California as document # 06-1779308.

Property Description. The Documents cover the following described real property (the "Real Property") located in Los Angeles County, State of California:

See Exhibit "A" Attached.

The Real Property or its address is commonly known as; 1801 W. Burbank Boulevard, Burbank, CA 91506.

Assignment of Deed of Trust; Assignment of Assignment of Rent. For Valuable Consideration, Assignor hereby assigns and conveys to Assignee all of Assignor's right, title, and interest in and to the above described Documents including any subsequent modifications, together with all of Assignor's right, title, and interest in and to the Promissory Note or Notes (or other credit agreements) secured by the Deed of Trust.

In witness whereof, assignor has executed this Assignment of Deed of Trust; Assignment of Assignment of Rents this 28 day of March, 2008.

Assignor:

By:    Richard S. Burke
Its:    Executive Vice President

---

## ACKNOWLEDGEMENT

STATE OF California            )
                              : ss
COUNTY OF Orange               )

On this 28th day of March, 2008 before me Mark Emmet Gordon Notary Public, personally appeared Richard S. Burke, the Executive Vice President, of Alliance Bank known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

MARK EMMET GORDON
Commission # 1739262
Notary Public - California
Orange County
My Comm Expires Apr 16, 2011

# **Exhibit 5**

**Central District of CA - Payoff information needed for Motion for Relief from Stay**

Zions First National Bank
**John Michael Licursi and Susan Annette Licursi, aka Hartshorn Marshall**

| | |
|---|---|
| Petition Date | 12/28/2010 |
| As of date for post-petition figures: | 3/4/2011 |

PAYOFF INFO

| | As of petition Date | Changes since petition date | Total owed as of date indicated above |
|---|---|---|---|
| Principal | $ 898,196.18 | $ - | $ 898,196.18 |
| Accrued Interest | $ 89,251.48 | $ 13,058.10 | $ 102,309.58 |
| Late Charges | $ 4,930.69 | $ 735.04 | $ 5,665.73 |
| Costs (Attorney fees, etc.) | $ 41,542.56 | $ 1,537.75 | $ 43,080.31 |
| Advances (property taxes, insurance) | | | $ - |
| Prepayment penalty | $ 8,981.96 | | $ 8,981.96 |
| Total | $ 1,042,902.87 | $ 15,330.89 | $ 1,058,233.76 |

OTHER INFO NEEDED

| | |
|---|---|
| Current interest rate | 7.93% |
| Amount of current monthly payment | $ 7,350.46 |
| Number of payments missed pre-petition | 13 |
| Number of payments missed post-petition | 2 |
| Dollar Amount of missed prepetition payments | $ 95,555.98 |
| Dollar Amount of missed post petition payments | $ 14,700.92 |

Amounts of missed pre-petition and post-petition payments do not include default interest, lates fees, or costs and advances.

# **Exhibit 6**

Donna T. Parkinson, State Bar No. 125574
Margaret E. Garms, State Bar No. 84938
**PARKINSON PHINNEY**
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:    (916) 449-1444
Facsimile:    (916) 449-1440
E-mail: donna@parkinsonphinney.com

Counsel for Secured Creditor
Zions First National Bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:10-bk-26168-GM |
| John Michael Licursi and Susan Annette Licursi, aka Hartshorn Marshall,, | Chapter 11 |
| | Date:    March 29, 2011 |
| | Time:    10:00 a.m. |
| Debtors and Debtors in Possession. | Location:  Courtroom 303 |
| | 21040 Burbank Blvd. |
| | Woodland Hills, CA 91367 |

**DECLARATION OF STEPHEN P. RETHMEIER IN SUPPORT OF MOTION BY ZIONS FIRST NATIONAL BANK FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY**

I, STEPHEN P. RETHMEIER, declare as follows:

1.    I am a licensed appraiser with Syn-Mar Associates, a real estate appraisal firm, whose office is located at 1420 North Lakeview Avenue, Anaheim, CA 92807.  If called to testify as a witness, I could and would testify competently to the facts and opinions stated herein of my own personal knowledge.

2.    I attach hereto as Exhibit 1 and incorporate herein by reference a true and correct copy of a Restricted-Use Appraisal Report (the "Appraisal") of real property known as 1801 W. Burbank Blvd., Burbank, CA 91604 (the "Property").  The valuation is as of September 22, 2010.

3.    I prepared the Appraisal with my colleague Robert A. Stier.  I am a certified

1   general real estate appraiser. My California appraiser's license number is AG012653.   The

2   Appraisal includes further information about my qualifications and those of my colleague.

3          4.         Our opinion of the value of the Property as of September 22, 2010 is stated in

4   the Appraisal. The Disposition Value is $1,080,000.

5          I declare under penalty of perjury that the foregoing true and correct and that this

6   Declaration was executed at Anaheim, CA, on February 22, 2011.

7

8

9                                                    Stephen P. Rethmeier

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{8515\13468\MG\A0150091.DOC}                                         Declaration of Stephen P. Rethmeier in support of
                                         2                    Motion by Zions First National Bank for Relief From Stay

*PREPARED FOR*
*MR. DECKER ADAMS, MAI*
*MANAGER*
*ZIONS FIRST NATIONAL BANK*
*ONE SOUTH MAIN STREET*
*5TH FLOOR*
*SALT LAKE CITY, UT 84133*
*A RESTRICTED-USE APPRAISAL REPORT*
*OF THE*
*INDUSTRIAL BUILDING*
*LOCATED AT*
*1801 WEST BURBANK BOULEVARD*
*BURBANK, CALIFORNIA*
*PREPARED BY*
*ROBERT A. STIER, SCREA AND*
*STEPHEN P. RETHMEIER, SCREA*
*APPRAISAL VALUATION DATE: SEPTEMBER 22, 2010*
*APPRAISAL REPORT DATE: OCTOBER 4, 2010*
*FILE NO. 10-526*

**October 4, 2010**
**Mr. Decker Adams, MAI**
Manager
Zions First National Bank
One South Main Street, 5th Floor
Salt Lake City, UT 84133

**Regarding:** A Restricted-Use Appraisal Report of the industrial building located at 1801 West Burbank Boulevard in Burbank, California.

**Dear Mr. Adams:**

In response to your authorization, we have conducted the required investigation, gathered the necessary data,

and made certain analyses which have enabled us to form an opinion of the market value on the above property. This has been presented in a RESTRICTED-USE APPRAISAL REPORT. The physical inspection and analyses that form the basis of this report was conducted by Robert A. Stier, SCREA. Stephen P. Rethmeier, SCREA assisted in the analysis, provided oversight as needed, supervised the assignment and reviewed the report. Unless specifically stated, the appraised value considers only real property. No non-realty items are included.

Based on the investigation and analyses and on our experience as real estate appraisers, we have formed the

opinion that, as of **September 22, 2010,** and subject to the premises, assumptions, and limiting conditions set forth in this report, the property described herein has a market value amounting to:

**Market Value of the Fee Simple Interest, "As Is" $1,200,000**

The following analyses, opinions, and conclusions were developed and this report has been prepared in conformity with the requirements of Zions First National Bank and California Bank & Trust (the intended users) and in compliance with Federal Regulation 12, CFR, Parts 34, 225, 323, 545, etc., which also requires

compliance with the Uniform Standards of Professional Appraisal Practice (USPAP). It is also subject to very specific limiting conditions presented on the following pages.

**Sincerely,**
**Robert A. Stier, SCREA**
**Certification #AG028430**
**Expires October 30, 2011**
**Stephen P. Rethmeier, SCREA**

**Certification #AG012653**
**Expires June 30, 2011**
**TABLE OF CONTENTS**
**PAGE**

Summary of Salient Data 1
Introduction 4
Purpose and Intended Use 5
Definition of Value 6
Definition of Property Rights Appraised 8
Definition of Market Rent 8
Extraordinary Assumptions (Specific Limiting Conditions) 9
Hypothetical Conditions 10
Scope of Work 10
Competency Rule 12
Real Estate Appraised 12
Zoning
Three Year Ownership History 13
Reasonable Exposure/Marketing Time 13
Highest & Best Use 13
Direct Sales Comparison Approach 16
Certificate of Appraisal i
General Contingent and Limiting Conditions ii
**ADDENDA**
Assessor Parcel Map Addenda "A"
Subject Photos Addenda "B"
Insurable Value Worksheet Addenda "C"
Engagement Letter Addenda "D"
Appraiser Qualifications Addenda "E"

Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
1

**SUMMARY OF SALIENT DATA**

Client Reference Number 10-1540
Location 1801 W. Burbank Boulevard
Burbank, CA 91506
Thomas Guide Map Page 533-E7
Owner/Borrower John & Susan Licursi Trust/John Licursi
Property Type Industrial Building
Building Area 5,605 SF
Office Area 3,819 SF (68%)
Truss Height 17'
Construction Type/Quality Class C/Average
Year Built 1967
Effective Age (Years) 15
Remaining Economic Life (Years) 35
Parking/Ratio 6 Spaces/1.1:1,000 SF
Site Area 10,020 SF
Assessor Parcel Number(s) 2438-025-005
Zoning C3 -- Commercial General Business
Land-to-Building Ratio 1.8:1
Site Coverage 56.0%

Census Tract 3109.00
Flood Zone X -- No Flood Hazard
Date of Value September 22, 2010
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
2
Interest Appraised Fee Simple
Occupancy 100% owner occupied
Insurable Replacement Value $350,000
Highest and Best Use - As Vacant Build-to-suit/Hold for Future Speculation
Highest and Best Use - As Improved Continuation of Existing Use
Value Indicators--
Cost Approach Not Applicable
Income Approach Not Provided
Direct Sales Comparison Approach $1,200,000
**Value Conclusion--**
**Market Value of the Fee Simple Interest, "As Is," as of the Appraisal Date:**
**One Million Two Hundred Thousand Dollars**
**($1,200,000)**
**Disposition Value Conclusion**
The client has requested that we provide a disposition value. More specifically, the client has stipulated the
following:
*"Fee simple by definition presumes the subject property is vacant. This is the starting point for estimating Zions Bank Disposition Value. The appraiser must assess the marketability of the subject and any discount*
*necessary to ensure a closed sale within 6 months. Assume a typical marketing effort for the purposes of this*
*analysis.*
*A discount to facilitate a 6-month sale is necessary if the marketing period for this property type, at the appraised value, is typically in excess of 6 months. This discount should reflect a price that produces a high probability of closing a sale within 6 months, and should be based on market comparables if possible. Although some subjectivity may be involved in deriving the magnitude of this discount, attempt to make your conclusion reasonable and convincing."*
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
3
We spoke with local brokers and reviewed several sales for similar occupancy and/or economic characteristics. While there have been some transactions which have occurred within the last 3 to 6 months that reflect disposition or liquidation sale motivations, the data is too scarce to populate a related Direct Sales Comparison Approach for this report. However, of the handful of appraisals that we have prepared that involved Disposition or Liquidation Value transactions, the discounts between the actual sale price and our conclusion of Market Value averaged about 5% to 10% for Disposition Value sales, and 10% to 20% for Liquidation Value sales.
In addition, according to local brokers we interviewed during the course of this assignment and/or others in the area, discounts are highly dependant on the terms and conditions of the transactions as it relates to the time allowed to satisfy contingencies and the extent of warranties and representations (for condition, title, environmental, etc). Another factor is the actual class, condition, status of the asset in question. However, they generally concur with the discounts quoted above, but also tend to qualify their opinions,

stating that in the current market, discounts still can vary subject to local demand and the needs of the seller.

For the purposes of our exposure period estimate, later in this report we have stated the subject would require no more than 6 to 9 months of exposure on average before a market value transaction could be achieved in today's market. Therefore, it is likely that normal exposure will extend well beyond 6 months. Based on our interviews with local market participants, our past experience, and the specifics of the subject property, a 10% ($120,000) discount is deemed sufficient to facilitate a 6-month sale under a disposition sale scenario. Deducting this from the "as is" value conclusion above results in **a Disposition Value estimate for the Fee Simple Interest in the amount of $1,080,000 (rounded).**

Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
4

## INTRODUCTION

The subject consists of a freestanding, 5,605-SF, Class "C," industrial building constructed in 1967 that includes 3,819 SF (68%) of office area. It is situated on an irregular-shaped, corner, alley-serviced site totaling 10,020 SF, located at 1801 W. Burbank Boulevard in Burbank, California. The subject is reportedly
100% owner-occupied.

We contacted the property contact, Mr. John Licursi (Phone# 818-526-8935) for access the subject. However, he would not provide access to the property and referred us to his attorney, whom never returned
our phone calls. Therefore, the client instructed us to perform an exterior inspection of the subject property.

Thus, our inspection of the property was limited and did not allow complete disclosure of all the actual physical characteristics, limitations, and/or enhancements of the subject property. If this is of concern to the
reader, we recommend a qualified professional be engaged to thoroughly inspect the property for a detailed
assessment of all physical characteristics including upgrades, deficiencies, deferred maintenance, etc. This
appraisal assumes there are no related issues (unseen or otherwise) that would alter or impair the utility and/or marketability of the subject.

Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
5

However, it should be noted that we were provided a previous appraisal prepared by Fewel & Associates dated April 22, 2010. Many of the details included herein regarding the subject are from that appraisal, as well as from interviews with brokers who know the subject including Mr. Daniel Meyers with Marcus & Millichap and Mr. Mike Hooker with Lee & Associates.

It should be noted that the prior appraisal reported the subject's building area to be 7,049 SF, which includes
1,444 SF of mezzanine office area. However, public records (which is typically based on permitted area) reports a building size of 5,624 SF. In addition, based on the subject's truss height of only 17 feet, it is highly unlikely that the ceiling height of the second-floor office area meets standard building requirements.

Lastly, the subject's parking does not meet current requirements for the first floor, let alone the addition of
the mezzanine area. Based on these factors, we believe the second-floor area to be unpermitted. Therefore,

this second-floor space has not been included as building area.

Although we have not recognized value for the second-floor office area, the market does not generally regard this as a deficiency that needs to be "cured." In other words, most owners will not arbitrarily remove excess or unpermitted office area, but will typically allow next generation users to dictate how much, if any, must be removed or reconfigured. When properties like the subject are purchased, buyers almost never require a deduction for the removal of excess/unpermitted office area. Because of this we have not applied a deduction to account for the cost to demolish this area.

## PURPOSE OF THE ASSIGNMENT, INTENDED USE AND DATE OF VALUE OPINION

The purpose of this appraisal is to estimate the market value of the fee simple interest, "as is," as of the appraisal date, as wells as the disposition value. Market Value and the interest appraised are defined below.

The intended use of this appraisal report is to assist Zions First National Bank and California Bank & Trust in the evaluation of the property being appraised for real estate lending purposes. The intended users of this report are Zions First National Bank and California Bank & Trust, their officers, administrators, employees, lending co-participants (if any) and appropriate regulatory agencies.

The applicable date of valuation is **September 22, 2010**.

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

6

## DEFINITION OF VALUE

Market Value[1] The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently, and knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a

sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(i) buyer and seller are typically motivated;

(ii) both parties are well informed or well advised, and acting in what they consider their best interests;

(iii) a reasonable time is allowed for exposure in the open market;

(iv) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

(v) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in

a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the

property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustments should approximate the market's reaction to the financing or concessions based on the appraisers' judgment.

Prospective Value[2] A forecast of the value expected at a specified future date. A prospective value opinion is most frequently sought in connection with real estate projects that are proposed, under construction, or under conversion to a new use, or those that have not achieved sellout or stabilized level of long-term occupancy and income at the time the appraisal report is written.

[1]This definition of market value is predicated on the Uniform Standards of Professional Appraisal Practice and fully complies

with those FIRREA requirements mandated by the Office of the Thrift Supervision (OTS), Office of the Comptroller of the

Currency (OCC), Federal Deposit Insurance Corporation (FDIC), National Credit Union Administration (NCUA), and the Federal Reserve System (FRB).

[2]**The Appraisal of Real Estate 13th Edition;** Appraisal Institute; 2009.

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

7

Disposition Value[3] The most probable price that a specified interest in real property is likely to bring under

all of the following conditions:

1. Consummation of a sale will occur within a limited future marketing period specified by the client.

2. The actual market conditions currently prevailing are those to which the appraisal property interest is subject.

3. The buyer and seller is each acting prudently and knowledgeably.

4. The seller is under compulsion to sell.

5. The buyer is typically motivated.

6. Both parties are acting in what they consider their best interests.

7. An adequate marketing effort will be made in the limited time allowed for the completion of a sale.

8. Payment will be made in cash U.S. dollars or in terms of financial arrangements comparable thereto.

9. The price represents the normal consideration for the property sold, unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Liquidation Value[3] The most probable price that a specified interest in real property is likely to bring under

all of the following conditions:

1. Consummation of a sale will occur within severely limited future marketing period specified by the client.

2. The actual market conditions currently prevailing are those to which the appraised property interest is subject.

3. The buyer is acting prudently and knowledgeably.

4. The seller is under extreme compulsion to sell.

5. The buyer is typically motivated.

6. The buyer is acting in what he or she considers his or her best interest.

7. A limited marketing effort and time will be allowed for the completion of sale.

8. Payment will be made in cash in U.S. dollars or in terms of financial arrangements comparable thereto.

9. The price represents the normal consideration for the property sold, unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

[3] **The Dictionary of Real Estate Appraisal 4th Edition**: Appraisal Institute

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

8

## DEFINITIONS OF PROPERTY RIGHTS APPRAISED

Fee Simple[2] Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.

Leased Fee[2] An ownership interest held by a landlord with the rights of use and occupancy conveyed by the

lease to others. The rights of the lessor (the leased fee owner) and the leased fee are specified by contact terms contained within the lease.

Leasehold[2] The interest held by the lessee (the tenant or renter) through a lease conveying the rights of use

and occupancy for a stated term under certain conditions.

Sandwich Lease2 A lease in which an intermediate, or sandwich, leaseholder is the lessee of one party and the lessor of another. The owner of the sandwich lease is neither the fee owner nor the user of the property;

he or she may be a leaseholder in a chain of leases, excluding the ultimate sublessee.

Partial Interest2 Divided or undivided rights in real estate that represent less than the whole.

**DEFINITION OF MARKET RENT**

Market Rent3 "The most probable rent that a property should bring in a competitive and open market reflecting all conditions and restrictions of the specified lease agreement including term, rental adjustment and revaluation, permitted uses, use restrictions, and expense obligations; the lessee and lessor each acting prudently and knowledgeably, and assuming consummation of a lease contract as of a specified date and the passing of the leasehold from lessor to lessee under conditions whereby:

1. Lessee and lessor are typically motivated.

2. Both parties are well informed or well advised, and acting in what they consider their best interests.

3. A reasonable time is allowed for exposure in the open market.

4. The rent payment is made in terms of cash in United States dollars, and is expressed as an amount per time period consistent with the payment schedule of the lease contract.

5. The rental amount represents the normal consideration for the property leased unaffected by special fees or concessions granted by anyone associated with the transaction."

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

9

**EXTRAORDINARY ASSUMPTIONS (SPECIFIC LIMITING CONDITIONS)**

USPAP defines an Extraordinary Assumption to be *"an assumption directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinion or conclusions."* Extraordinary assumptions presume as fact otherwise uncertain information. In other words, this type assumption involves uncertainty about an underlying premise. This appraisal has the following extraordinary assumption(s).

1. The client provided us a Policy of Title Insurance prepared by Equity Title Company, dated August 10, 2006, and a prior appraisal of the subject property prepared by Fewel & Associates, with a valuation date of April 22, 2010. It is assumed that all information known to the client and relative to the valuation has been accurately furnished and that there are no undisclosed reports, leases, agreements, options, liens, or other encumbrances affecting the use or value of the subject property.

2. A title report can be the primary method of obtaining information about easements, CC&Rs, deed restrictions, and other important information that may materially impact the value of a given property. However, the aforementioned title report is dated (August 2006). Since we did not have access to a current title report depicting all matters which may or may not have impact on the property, we emphasize that the value estimated herein assumes no adverse conditions. If a title report were to uncover unfavorable conditions, the value of the subject property could be impacted and therefore this report would be subject to revision.

3. We contacted the property contact, Mr. John Licursi (Phone# 818-526-8935) for access the subject. However, we would not provide access to the property and referred us to his attorney, whom never returned our phone calls. Therefore, the client instructed us to perform an exterior inspection of the subject property. Thus, our inspection of the property was limited and did not allow complete disclosure of all the actual physical characteristics, limitations, and/or enhancements of the subject property. If this is of concern to the reader, we recommend a qualified professional be engaged to thoroughly inspect the property for a detailed assessment of all physical characteristics including upgrades, deficiencies, deferred maintenance, etc. This appraisal assumes there are no related issues

(unseen or otherwise) that would alter or impair the utility and/or marketability of the subject.
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
10
4. According to the Los Angeles County Treasurer-Tax Collector's office, the subject property had
delinquent taxes for the year 2009 of $9,959.40 (including penalties). In regards to these
delinquent taxes, in the appraisal process title to the property is always assumed to be clear and
marketable. In other words, this appraisal assumes that any negative issues relating to the
property and/or owner are resolved and removed as an influence

**HYPOTHETICAL CONDITIONS**
USPAP defines a hypothetical condition as *"that which is contrary to what exists but is supposed for the
purpose of analysis."* Hypothetical conditions assume conditions that are contrary to known fact.
Uncertainty is not involved with a hypothetical condition. An essential premise underlying the valuation
is known to exist on the date of value. In this case, there were no hypothetical conditions for this
appraisal.

**SCOPE OF WORK**
This appraisal is prepared in conformity with the requirements of Zions First National Bank and
California
Bank & Trust (the intended users) and in compliance with Federal Regulation 12 CFR, Parts 34, 225, 323,
545, etc., which also requires conformance to generally accepted appraisal standards as evidenced by the
Uniform Standards of Professional Appraisal Practice (USPAP).
This is a Restricted-Use Report which is intended to comply with the reporting requirements set forth
under
Standards Rule 2-2(c) of the Uniform Standards of Professional Appraisal Practice. As such, it presents
no
discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the
appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is
retained in the appraisers' file. The depth of discussion contained in this report is specific to the needs of
the
client and for the intended use stated below. The appraisers are not responsible for unauthorized use of
this
report.
The scope of work included an exterior inspection of the subject conducted by Robert A. Stier, SCREA,
complete photographs thereof. Since the previous appraiser, Mr. Jeff Fewel, CGREA, of Fewel &
Associates had full access to the subject and was able to measure the building, we have based our
conclusion of building area on the first-floor size reported in the aforementioned appraisal (Note: Public
records reports a building of 5,624 SF, which is within 19 SF of Mr. Fewel's measurements. Therefore,
Mr. Fewel's calculation of the first floor appears reasonable). . Site size was obtained from public
records. If there is a concern with respect to our conclusion of building/site size and the expectation of the
client, borrower, or other market participant, we recommend a qualified individual (architect, surveyor,
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
11
contractor, building inspector, etc.) be engaged to survey the subject. If it is determined that the building
or site size used herein is incorrect, we reserve the right to amend this appraisal.
With respect to the type and extent of the data researched, we pursued conversations (as necessary) with
brokers, developers, appraisers, property owners, and public officials regarding the real and personal
property values, the general economy, the market area and local neighborhood, supply and demand
factors,

zoning and building issues, highest and best use issues, capital market rates, building cost estimates, and comparable sales in the subject area. Additional information was obtained regarding relevant and appropriate
adjustments for the data contained herein.
Regarding data verification, direct and indirect verification was employed for this assignment. Direct data verification confirms information used in the report with one or more parties who have in-depth knowledge
about the comparable. Indirect verification employs information obtained from a secondary source like a data reporting service, a multiple listing service, or another appraiser. Whenever possible, we attempt direct
verification of all data employed.
We have performed this appraisal service as a disinterested party, employing due diligence in the investigation, analyses, and conclusions. The efforts made are appropriate to the significance of the appraisal
problem. The client's instructions are contained in the addenda section of this report. We have complied with
these instructions to the best of our ability, and no other instructions were given.
The most likely buyer of the subject would be an owner-user. With respect to the type and extent of analysis applied, one of the three traditional techniques of estimating value has been presented in the following appraisal report. The Income Approach and Cost Approach have been excluded.
The appraisal requirements under the Uniform Standards of Professional Appraisal Practice, Standard Rule 2-2 (c) (viii) states that an appraiser must ". . . explain . . . the reason for excluding any of the usual valuation approaches." This rule leaves sufficient room for an appraiser to eliminate an approach provided justification is offered to support this decision.
In accordance with prior agreement between the client and the appraisers, this report will employ only the Direct Sales Comparison Approach. There is adequate market sales data available and it is the approach that
would most likely be used by prospective buyers of the subject in this market. It is the appraiser's opinion that the scope of research and analysis associated with this appraisal is adequate to support the value conclusion and render a reliable and credible result.

**COMPETENCY RULE**
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
12
A specific requirement of the Uniform Standards of Professional Appraisal Practice is that "prior to accepting an assignment or entering into an agreement to perform any assignment, an appraiser must properly identify the problem to be addressed and have the knowledge and experience to complete the assignment competently. . ."
"Competency applies to factors such as, but is not limited to, an appraiser's familiarity with a specific type of property, a market, a geographic area, or an analytical method." Essentially, the Competency Rule requires an appraiser have the experience and knowledge to perform the appraisal in a competent manner.
To that end, the signatories on this appraisal report are currently certified under the State of California and have attained a level of competency necessary to complete the assignment, using all of the commonly recognized analysis techniques considered normal for a prudent evaluation effort. These recognized analysis techniques have been learned through practical field experience, as well as through classroom instruction. The signatories have appraised numerous properties like the subject, have a familiarity with the local market and geographic area, and have appropriate expertise for the property type in question.
We are aware of no deficiencies in competence that would hinder a credible appraisal result. The readers are referred to the appraiser qualifications in the addenda section of this report for additional confirmation

of adequate technical training and experience appraising the subject property type.

**REAL ESTATE APPRAISED**

The subject property consists of a freestanding, 1-story, 5,605-SF, Class "C," industrial building constructed in 1967, that includes 3,819 SF (68%) of office area.

Based on the aforementioned appraisal, the office area generally consists of suspended acoustic ceilings; recessed fluorescent lighting; painted drywall partitions; carpet and ceramic-tile flooring; and heating/cooling provided by HVAC systems. The warehouse area is accessible via two ground-level loading doors and features a minimum clearance height of approximately 17 feet and concrete floors. As noted previously, the prior appraisal reported the subject's building area to be 7,049 SF, which includes

1,444 SF of mezzanine office area. However, public records (which is typically based on permitted area) reports a building size of 5,624 SF. In addition, based on the subject's truss height of only 17 feet, it is highly unlikely that the ceiling height of the second-floor office area meets standard building requirements.

Lastly, the subject's parking does not meet current requirements for the first floor, let alone the addition of

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

13

the mezzanine area. Based on these factors, we believe the second-floor area to be unpermitted. Therefore,

this second-floor space has not been included as building area.

Although we have not recognized value for the second-floor office area, the market does not generally regard this as a deficiency that needs to be "cured." In other words, most owners will not arbitrarily remove excess or unpermitted office area, but will typically allow next generation users to dictate how much, if any, must be removed or reconfigured. When properties like the subject are purchased, buyers almost never require a deduction for the removal of excess/unpermitted office area. Because of this we have not applied a deduction to account for the cost to demolish this area.

The improvements are situated on an irregular-shaped, corner, alley-serviced site totaling 10,020 SF that is zoned "C3—Commercial General Business." This zoning classification is intended primarily for commercial uses, along with limited industrial and residential uses. The subject property is currently used as a commercial/residential glass contractor, and as such, appears to no longer be permitted in this zone. Hence, the subject is a pre-existing, legal, nonconforming use within this zone.

Access to the subject, is via one drive entry from Burbank Boulevard. The topography of the site is generally level and at street grade. Site improvements consist of an industrial building, a-concrete-paved yard/parking lot, and wrought-iron fencing. The subject includes 6 parking spaces which equates to a parking ratio of 1.1 spaces per 1,000 SF of building area (based on 5,605 SF). The subject is considered to be non-conforming in regards to parking requirements.

**THREE-YEAR SALES HISTORY**

According to public records, title to the subject is currently vested in the "*John & Susan Licursi Trust/Licursi Trust.*" Public records reports that this entity has held title to the subject for several years. We are aware of no listings or transfers of the subject property within the past 3 years, although no warranty

of title is implied.

**INDICATED EXPOSURE/MARKETING TIME**

Approximately 6 to 9 months, presupposing a listing price that would be at, or near, the appraised value.

**HIGHEST AND BEST USE -- As If Vacant:** Build-to-suit/Hold for Future Speculation.

**HIGHEST AND BEST USE -- As Improved:** Continuation of Existing Use.

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

14

**Summary of Value (Refer to Spreadsheet on a Following Page)**

Cost Approach Not Applicable

Income Approach Not Provided

Direct Sales Comparison Approach $1,200,000

**Market Value of the Fee Simple Interest, "As Is," as of the Appraisal Date**

**One Million Two Hundred Thousand Dollars**

**($1,200,000)**

**Sincerely,**

**Robert A. Stier, SCREA**

**Certification #AG028430**

**Stephen P. Rethmeier, SCREA**

**Certification #AG012653**

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

15

**DIRECT SALES COMPARISON APPROACH**

File No. 10-526 Subject No. 1 No. 2 No. 3 No. 4
**LOCATION** 1801 W. Burbank Boulevard 3520 W. Magnolia Blvd. 730 N. Mariposa St. 7243 Woodley Ave. 1014 W. Magnolia Blvd.
Burbank Burbank Burbank Van Nuys Burbank
Map Grid 533-E7 563-D2 533-F7 531-F4 563-G1
APN 2438-025-005 2480-009-011+ 2449-013-038 2205-027-028 2446-002-030+
Use/Zoning Industrial - C3 Industrial - MPC-1 Industrial - M1 Industrial - C2 Industrial - C3
**DESCRIPTIVE DATA**
Rentable Area 5,605 6,000 6,060 4,000 8,424
Office Area (SF) 3,819 N/A 1,660 2,000 2,000
Office % 68% N/A 27% 50% 24%
Construction Type/Quality C/Average D/Superior (retail) C/Similar C/Similar C/Similar
Year Built 1967 1925 1998 1985 1952 & 1953
Effective Age (years) 15 15 5 15 20
Condition Average Similar Superior Similar Inferior
Truss Height (Feet) 17 N/A 18 12 15
Site Area (SF) 10,020 13,650 9,817 7,196 8,405
Land/Bldg Ratio 1.8 2.3 1.6 1.8 1.0
**SALE DATA**
Sale Date August 24, 2010 June 22, 2010 February 16, 2010 Available
Deed Reference 1180281 848802 207797 N/A
Buyer Seven Grand Properties, LLC Roberto & Cristina Rodriguez Hirsch Custom Cabinets, Inc. N/A
Seller Burbank-Cordova Properties, LLC Triangle Investment Properties, LLC 7243 Woodley Ave., LLC Rank Industries
Source/Verification CoStar/NDC/Appraisal File CoStar/NDC/AIR/Broker CoStar/NDC/AIR/Broker CoStar/NDC/Broker
Sale Amount $1,725,000 $1,200,000 $835,000 $1,795,000
Price / SF $287.50 $198.02 $208.75 $213.08
Interest Conveyed Leased Fee Fee Simple Fee Simple Fee Simple
OAR Partial Owner-User Owner-User Owner-user Available to an owner-user
**FINANCING**
Lender Bank of America First Private Bank & Trust US Bank All-cash to
Amount Financed $1,293,750 $840,000 $751,500 Seller Assumed
**ADJUSTMENTS**
Interest Conveyed ----- ----- ----- -----
Conditions of Sale (Cash Equivalency, Financing, etc.) $30.00 ----- ----- ($42.62)
Market Conditions/Time (-5.0% Annual Rate of Change) ----- ($2.50) ($6.25) -----
**Net $317.50 $195.52 $202.50 $170.46**
Location ----- ----- $10.15 -----
Traffic/Visibility ----- $19.55 ----- -----
Quality & Appeal ($47.65) ----- ----- -----
Age & Condition ----- ($12.50) ----- $6.25
Size ----- ----- ($5.20) $9.15
Office % ----- $10.25 $4.50 $11.00
Land/Building Ratio ($16.25) ----- ----- $26.00
**Adjusted SF Indications $253.60 $212.82 $211.95 $222.86**
Net Percentage of Adjustments -11.8% 7.5% 1.5% 4.6%
Elements of Good Comparability % of adj within city Configuration
Sales Receiving Greatest Emphasis ***** *****
Average of All SF Indicators = $225.31 Average of Best SF Indicators = $212.39
Range Between Comparables Before Adjustment = $89.48/SF
Range Between Comparables After Adjustment = $41.65/SF
**--Indicated Value via Direct Sales Comparison Approach: $1,200,000, or $214.09/SF**

Industrial Building 17 10-526

1801 W. Burbank Boulevard

Burbank, California

Sale Comparable #1; 3520 West Magnolia

Boulevard in Burbank.

Sale Comparable #2; 730 North Mariposa Street in

Burbank.

Sale Comparable #3; 7243 Woodley Avenue in Van
Nuys.
Sale Comparable #4; 1014 West Magnolia
Boulevard in Burbank.
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
i

## CERTIFICATE OF APPRAISAL

I certify that, to the best of my knowledge and belief, . . .

· the statements of fact contained in this report are true and correct.

· the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

· I have no present or prospective interest in the property that is the subject of this report, and no personal interest or bias with respect to the parties involved.

· I have not provided previous appraisal services related to the subject property within the past three years immediately preceding acceptance of this assignment.

· I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

· my engagement in this assignment was not contingent upon developing or reporting predetermined results.

· my compensation for completing this assignment is not contingent upon the developing or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the concurrence of a subsequent event directly related to the intended use of this appraisal. This appraisal was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

·my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements Zions First National Bank and California Bank & Trust (the intended users), and in conformity with the Uniform Standards of Professional Appraisal Practice.

· Robert A. Stier conducted an exterior inspection of the subject property and performed the analysis that forms the basis of this report. Stephen P. Rethmeier assisted in the analysis, provided oversight as needed, reviewed the report, and supervised the assignment. Mr. Rethmeier also conducted an exterior inspection of the subject property and the comparables. The appraiser(s) state certification has not been revoked, suspended, canceled, or restricted.

· no one provided significant professional assistance to the person(s) signing this report.

**Robert A. Stier Stephen P. Rethmeier**
**Certified Real Estate Appraiser Certified Real Estate Appraiser**
**Certification #AG028430 Certification #AG012653**
**Expires October 30, 2011 Expires June 30, 2011**
Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
ii

## GENERAL CONTINGENT AND LIMITING CONDITIONS

-- Acceptance of, and/or use of, this appraisal report by the client or any third party constitutes acceptance of the following conditions. The liability of SYN-MAR Associates (The Appraiser), its employees, and subcontractors is limited to the client only and to the fee actually received by appraiser. Further, there is no accountability, obligation, or liability to any third party. If this report is placed in the hands of anyone other than the client, the client shall make such party aware of all limited conditions and assumptions of the assignment and related discussions. The appraiser(s) is in no way to be responsible for any costs

incurred to discover or correct any deficiencies of any type present in the property: physically, financially, and/or legally. The client agrees that, in the case of lawsuit (brought by lender, partner, or part owner in any form of ownership, tenant, or any other party), any and all awards or settlements of any type in such suit, regardless of outcome, client will hold appraiser completely harmless in any such action.

-- Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be

used for other than its intended use; the physical report(s) remains the property of the appraiser for the use of the client, the fee being for the analytical services only.

-- This appraisal is to be used only in its entirety, and no part is to be used without the whole report. All conclusions and opinions concerning the analysis as set forth in the report were prepared by the appraiser(s) whose signature(s) appears on the appraisal report, unless indicated as "Review Appraiser." No change of any item in the report shall be made by anyone other than the appraiser and/or officer of the firm. The appraiser and firm shall have no responsibility if any such unauthorized change is made.

-- No responsibility is assumed for accuracy of information furnished by the work of or work by others, the

client, his designee, or public records. Furthermore, no liability is assumed for such information or the work of possible subcontractors. Be advised that some of the people associated with our firm and possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction or from affidavit or other source thought reasonable; all are considered appropriate for inclusion to the best of our factual judgment and knowledge. An impractical and uneconomic expenditure of time would be required in attempting to furnish unimpeachable verification in all instances, particularly as to engineering and market-related information. It is suggested that the client consider independent verification as a prerequisite to any transaction involving sale, lease, or other significant commitment of funds or subject property.

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

iii

-- The contract for appraisal, consultation, or analytical service is fulfilled and the total fee is payable upon

completion of the report. The appraiser(s) or those assisting in preparation of the report will not be asked or required to give testimony in court or hearing because of having made the appraisal, in full or in part, nor engage in post-appraisal consultation with client or third parties except under separate and special arrangement and at additional fee. If testimony or deposition is required because of any subpoena, the client shall be responsible for any additional time, fees, and charges regardless of issuing party.

-- The sketches and maps in this report are included to assist the reader in visualizing the property and are not necessarily to scale. Various photos, if any, are included for the same purpose as of the date of the photos. Site plans are not surveys unless shown from separate surveyor.

-- While the building size used herein is assumed to be correct, we cannot warrant its accuracy and assume no related liability. This is because the process of measuring a building can often be difficult and complex. Multi-story buildings can be particularly problematic, and irregular-shaped, radiused, or angled walls can require assumptions with respect to perspective and relative position that may by incorrect. Ideally, we prefer to review architectural plans and utilize the size reported by the original designer of the building. In the absence of plans, we might measure the building, and then attempt to reconcile our conclusion, if possible, with a rent roll, marketing brochure, or public records in the form of assessor's tax rolls (although assessor information tends to be the least reliable). If there is a concern with respect to our conclusion of building size and the expectation of the client, borrower, or other market participant, we recommend a qualified individual (architect, contractor, building inspector, etc.) be engaged to measure the building. If it is determined that the building size used herein is incorrect, we reserve the right to amend this appraisal.

-- No responsibility is assumed for matters legal in character or nature, nor of any architectural, structural, mechanical, or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of the report. The legal description is assumed to be correct as used in this report as furnished by the client, his designee, or as derived by the appraiser.

-- No advice is given regarding mechanical equipment or structural integrity or adequacy; nor soils and potential for settlement, drainage, and such (seek assistance from qualified architect and/or engineer); nor matters concerning liens, title status, and legal marketability (seek legal assistance); and such. The lender and owner should inspect the property before any disbursement of funds; further, it is likely that the lender or owner may wish to require mechanical or structural inspections by qualified and licensed contractor, civil or structural engineer, architect, or other expert.

Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
iv

-- The appraiser(s) has inspected as far as possible, by observation, the land and the improvements; however, it was not possible to personally observe conditions beneath the soil or hidden structural or other components. The appraisal is based on there being no hidden, unapparent, or apparent conditions which would render it more or less valuable. I have not critically inspected mechanical components within the improvements unless specifically stated and considered in the report. All mechanical components are assumed to be in operable condition and status standard for properties of the subject type. No judgment may be made by us as to adequacy of insulation, type of insulation, or energy efficiency of the improvements or equipment which is assumed standard for subject age and type. The value estimate considers there being no such conditions that would cause a loss of value. The land or the soil of the area being appraised appears firm; however, subsidence in the area is unknown. The appraiser(s) does not warrant against this condition or occurrence of problems arising from soil conditions.

-- Endangered species may be prevalent in undeveloped land in the area. Visual inspection denotes no presence of an endangered species of habitat. However, the appraiser is not an expert in the identification of endangered species or habitats, and this report should not be relied upon to determine whether sensitive ecological issues impact the property. This fact can only be determined by a biological survey of the property. Existence of such species or habitats on the property could affect potential uses and value. Further, it should be emphasized, this appraisal report was prepared for the sole use of the client and does not constitute an expert biological assessment of the subject property.

-- Unless otherwise stated in this report, the existence of hazardous material, which may or may not be present on the property, was not observed by the appraiser(s). The appraiser(s) has no knowledge of the existence of such materials on or in the property. The appraiser(s), however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially-hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired.

-- If the appraiser(s) has not been supplied with a termite inspection, survey, or occupancy permit, no responsibility or representation is assumed or made for any costs associated with obtaining same or for any deficiencies discovered before or after they are obtained. No representation or warranties are made concerning obtaining the above-mentioned items.

Industrial Building 10-526
1801 W. Burbank Boulevard
Burbank, California
v

-- The appraiser(s) assumes no responsibility for any costs or consequences arising due to the need, or the

lack of need, for flood hazard insurance. An agent for the Federal Flood Insurance Program should be contacted to determine the actual need for flood hazard insurance.

-- The appraisal is based on the premise that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless otherwise stated in the report; further, that all applicable zoning, building, use regulations, and restrictions of all types have been complied with unless otherwise stated in the report; further, it is assumed that all required licenses, consents, permits, or other legislative or administrative authority, local, state, federal, and/or private entity or organization have been or can be obtained or renewed for any use considered in the value estimate.

-- The distribution of the total valuation in this report between land and improvements applies only under the existing program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and are invalid if so used.

-- No environmental or impact studies, special market study or analysis, highest and best use analysis study, or feasibility study has been requested or made unless otherwise specified in an agreement for services or in the report.

-- The market value estimated, and the costs used, are as of the date of the estimate of value. All dollar amounts are based on the purchasing power and price of the dollar as of the date of the value estimate.

-- Furnishings and equipment or personal property or business operations, except as specifically indicated and typically considered as a part of real estate, have been disregarded with only the real estate being considered in the value estimate unless otherwise stated. In some property types, business and real estate interests and values are combined.

-- Improvements proposed, if any, on- or offsite, as well as any repairs required, are considered, for purposes of this appraisal, to be completed in good and workmanlike manner according to information submitted and/or considered by the appraisers. In cases of proposed construction, the appraisal is subject to change upon inspection of property after construction is completed. This estimate of market value is as of the date shown, as proposed, as if completed, and operating at levels shown and projected.

Industrial Building 10-526

1801 W. Burbank Boulevard

Burbank, California

vi

-- The estimated market value, which is defined in the report, is subject to change with market conditions over time; value is highly related to exposure, time, promotional effort, terms, motivation, and conditions surrounding the offering. The value estimate considers the productivity and relative attractiveness of the property physically and economically in the marketplace.

-- In cases of appraisals involving the capitalization of income benefits, the estimate of market value or investment value or value in use is a reflection of such benefits and the appraiser's interpretation of income and yields and other factors derived from general and specific client and market information. Such estimates are based on income as of the appraisal date along with any reasonable expectations of change in that income over the succeeding 12 months to the extent estimable on the appraisal date; they are, however, subject to change or outcomes other than anticipated due to the dynamic nature of the real estate market.

-- The "estimate of market value" in the appraisal report is not based in whole or in part upon the race, color, or national origin of the present owners or occupants of the properties in the vicinity of the property appraised.

-- The appraisal report and value estimate are subject to change if physical, legal, or taxing entity or financing is different than that envisioned in this report. Values are based on present tax laws and do not anticipate future changes in tax laws.

-- It is assumed that the property which is the subject of this report will be under prudent and competent ownership and management, neither inefficient nor superefficient.

-- The fee for this appraisal or study is for the service rendered and not for the time spent on the physical report or the physical report itself.

-- Unless otherwise noted herein, the review appraiser has supervised and directed all of the research

effort,

has taken a major role in the analysis of the data produced by this research, but has not personally performed the research and has not necessarily inspected the subject or market comparable properties.

-- The appraiser(s) reserve the right to alter statements, analyses, conclusions, or any value estimates in the

appraisal if there becomes known to us facts pertinent to the appraisal process which were unknown to us when the report was finished.

# ADDENDA SECTION
# ADDENDA "A"
# ASSESSOR PARCEL MAP


# ADDENDA "B"
# SUBJECT PHOTOS

The subject is located at 1801 West Burbank Boulevard in Burbank.
A rear view of the subject.
Looking east on Burbank Boulevard. Looking west on Burbank Boulevard.
Looking north on Orchard Drive. Looking south on Orchard Drive.

# ADDENDA "C"
# INSURABLE VALUE WORKSHEET
## *INSURABLE VALUE WORKSHEET*

*PROPERTY ADDRESS: 1801 W. Burbank Boulevard*
*Burbank, CA 91506*
*PROPERTY TYPE: Industrial Building*
*COST SOURCE: Marshall Valuation Service*
*SECTION/PAGE(s): 14/14*
*REMAINING ECONOMIC LIFE 35 Years*

*\*Insurable Value'' means the value of the destructible portions of a property, which determines the amount of insurance that may, or should, be carried to indemnify the owner in the event of loss. For practical purposes, the replacement cost estimate used to calculate insurable value should include the foundation.*

*Structure(s)[1] $345,713*

*Tenant Improvements (in place*
*Tenant Improvements (yet to be installed)*
*Personal Property, FF & E[2]*
*TOTAL INSURABLE VALUE[3] ............................................... $350,000*

*'This estimate is based on ''Replacement Cost New'' with no depreciation and should reflect only ''direct'' or ''hard'' construction costs such as construction labor and materials: repair design engineering; permit fees; and contractor's profit, contingency, and overhead. It should not include surveys, site development, financing, or land acquisition costs. If Marshall Valuation costs are used, all indirect items (A&E Fees, construction interest, etc.) must be excluded. Marshalls indirect cost items typically constitute about 10% of their estimate.*

*[2] This will be 100% of the replacement cost of any personal property necessary for the operation, management, marketing of the project and/or going concern. Examples are refrigerators and drapes in an apartment building, kitchen equipment in a restaurant, and furnishings (case goods) in a hotel.*
*[3] Rounded to the nearest $10,000.*

# ADDENDA "D"
# ENGAGEMENT LETTER



# ADDENDA "E"
# APPRAISERS QUALIFICATIONS

# **Exhibit 7**

B6A (Official Form 6A) (12/07)

In re    **John Michael Licursi,**                                                Case No.    **1:10-bk-26168-GM**
         **Susan Annette Licursi**
                                                          ,
                                    Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Commercial Building**<br>**1801 W. Burbank Blvd.**<br>**Burbank, Ca 91604** | **Fee simple** | **C** | 1,550,000.00 | 1,258,460.14 |
| **Primary Residence**<br>**12406 Rye St.**<br>**Studio City, CA 91604** | **Fee simple** | **C** | 600,000.00 | 715,568.00 |
| **Secondary Residence/Retirement**<br>**Paseo De Las Missiones**<br>**San Jose Del Cabo, MX 28400** | **Fee Simple** | **C** | 450,000.00 | 326,207.00 |
| **Retirement Investment**<br>**Vacant Land**<br>**40 ACS SE 1/4 of NW 1/4 of SEC 21 T IS R 19W**<br>**Encinial Canyon**<br>**Malibu, Ca** | **Fee Simple** | **C** | 450,000.00 | 175,407.58 |
| **Retirement Investment**<br>**Vacant Land**<br>**Lot 67, Tract 8245**<br>**Rio Vista Drive**<br>**Big River, Ca** | **Fee Simple** | **C** | 50,000.00 | 0.00 |

|  | Sub-Total > | 3,100,000.00 | (Total of this page) |
|---|---|---|---|
|  | Total > | 3,100,000.00 | |

___0___ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                    Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re    **John Michael Licursi,**                                    Case No.   **1:10-bk-26168-GM**
         **Susan Annette Licursi,**
                                                                ,
                        Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxx-9001**<br><br>**California Bank & Trust**<br>**2929 N. Central Ave. #1200**<br>**Phoenix, AZ 85012** | | C | 9/25/08<br><br>**Second Mortgage**<br><br>**Commercial Building**<br>**1801 W. Burbank Blvd.**<br>**Burbank, Ca 91604** | | | | | |
| | | | Value $            **1,550,000.00** | | | | 360,263.96 | 0.00 |
| Account No. **xxxxxxx-9001**<br><br>**California Bank & Trust**<br>**2929 N. Central Ave. #1200**<br>**Phoenix, AZ 85012** | | C | 12/7/06<br>**Deed of Trust First (First Mortgage)**<br>**Retirement Investment**<br>**Vacant Land**<br>**40 ACS SE 1/4 of NW 1/4 of SEC 21 T IS**<br>**R 19W**<br>**Encinial Canyon**<br>**Malibu, Ca** | | | | | |
| | | | Value $            **450,000.00** | | | | 175,407.58 | 0.00 |
| Account No. **xxxxxxxx7938**<br><br>**Chase**<br>**Po Box 1093**<br>**Northridge, CA 91328** | | W | Opened  7/18/05  Last Active 10/15/10<br><br>**Deed of Trust First (First Mortgage)**<br><br>**Primary Residence**<br>**12406 Rye St.**<br>**Studio City, CA 91604** | | | | | |
| | | | Value $            **600,000.00** | | | | 369,315.00 | 0.00 |
| Account No. **xxxxxxxx3357**<br><br>**Chase**<br>**Po Box 901039**<br>**Fort Worth, TX 76101** | | W | Opened  8/03/04  Last Active 12/20/10<br><br>**Home Equity Line of Credit (Second Mortgage)**<br><br>**Primary Residence**<br>**12406 Rye St.**<br>**Studio City, CA 91604** | | | | | |
| | | | Value $            **600,000.00** | | | | 346,253.00 | 115,568.00 |
| __1__  continuation sheets attached | | | Subtotal<br>(Total of this page) | | | | 1,251,239.54 | 115,568.00 |

B6D (Official Form 6D) (12/07) - Cont.

In re  **John Michael Licursi,**
    **Susan Annette Licursi**

Case No.   **1:10-bk-26168-GM**

                             ,

                 Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxxx5734 | | | Opened 1/30/09 Last Active 12/06/10 | | | | | |
| Hann Financial Service 1 Centre Dr Jamesburg, NJ 08831 | | H | Auto Loan 2006 Hummer Location: 12406 Rye St., Studio City CA 91604 | | | | | |
| | | | Value $ 55,000.00 | | | | 54,986.00 | 0.00 |
| Account No. xxxxxxxx3933 | | | Opened 9/03/08 Last Active 10/01/10 | | | | | |
| New South Fed Saving 425 Phillips Blvd Ewing, NJ 08618 | | H | Deed of Trust First (First Mortgage) Secondary Residence/Retirement Paseo De Las Missiones San Jose Del Cabo, MX 28400 | | | | | |
| | | | Value $ 450,000.00 | | | | 326,207.00 | 0.00 |
| Account No. xxxxxxxxxx0F47 | | | Opened 9/26/10 Last Active 12/06/10 | | | | | |
| Topa Financial Corp 1800 Av Of The Stars Ste Century City, CA 90067 | | W | Car Loan 2011 Chevy Traverse Location: 12406 Rye St., Studio City CA 91604 | | | | | |
| | | | Value $ 40,000.00 | | | | 51,954.68 | 11,954.68 |
| Account No. xxxxxxxxxx0001 | | | 12/8/06 | | | | | |
| Wells Fargo Bank N.A> PO Box 5169 Sioux Falls, SD 57117-5169 | | C | Loan 2008 Warrior CR 3905 RV Storage Location: Sun Valley | | | | | |
| | | | Value $ 15,000.00 | | | | 55,816.06 | 40,816.06 |
| Account No. xxxxxxx-9001 | | | 7/27/06 | | | | | |
| Zions First National Bank 10 E. South Temple, 5th Fl. Salt Lake City, UT 84111 | | C | Deed of Trust First (First Mortgage) Commercial Building 1801 W. Burbank Blvd. Burbank, Ca 91604 | | | | | |
| | | | Value $ 1,550,000.00 | | | | 898,196.18 | 0.00 |

Sheet **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Secured Claims

|  | Subtotal (Total of this page) | 1,387,159.92 | 52,770.74 |
|---|---|---|---|
|  | Total (Report on Summary of Schedules) | 2,638,399.46 | 168,338.74 |

| In re | (SHORT TITLE) | | CHAPTER: |
|---|---|---|---|
| | | Debtor(s). | CASE NO.: |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as _____ _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | /s/ Alvin Tsao |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

**John Michael Licursi and Susan Annette Licursi, aka Hartshorn Marshall,**
**Case No. 1:10-bk-26168-GM**

**Zions First National Bank's Motion for Relief From Stay**
**(1801 W. Burbank Blvd., Burbank, CA)**

## SERVICE BY THE COURT BY E-MAIL[1]

**Debtor's Counsel:**
Gerald Wolfe    gerald@gwesq.com, ecf.gwesq@gmail.com

**US Trustee:**
S Margaux Ross    margaux.ross@usdoj.gov
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**Counsel to Junior Creditor, California Bank & Trust**
Angella D Yates    ayates@buchalter.com

**Other:**
Ofer M Grossman    omglaw@gmail.com
Christopher M McDermott    ecfcacb@piteduncan.com
Donna T Parkinson    donna@parkinsonphinney.com
Kelly Ann M Tran    ktran@mkblaw.com
Edward T Weber    bknotice@rcolegal.com
Gilbert B Weisman    notices@becket-lee.com

## SERVICE BY FIRST-CLASS MAIL[2]

**Debtor**
John Michael Licursi
12406 Rye St
Studio City, CA 91604

**Joint Debtor**
Susan Annette Licursi
12406 Rye St
Studio City, CA 91604

**Record Title Holder**
John M. Licursi, Trustee
The John and Susan Licursi 2006 Trust
1801 W. Burbank Blvd.
Burbank, CA 91506

**Record Title Holder**
Susan A. Licursi, Trustee
The John and Susan Licursi 2006 Trust
1801 W. Burbank Blvd.
Burbank, CA 91506

---

[1] Parties served by e-mail received the entire motion and all supporting documents and exhibits.

[2] The judge received the entire motion and all supporting documents and exhibits, plus the Notice of Availability of Documents.  All other parties served by First Class Mail received the Notice of Motion, Motion, and Declaration of Randy McDougal, without exhibits, and the Notice of Availability of Documents.

| | |
|---|---|
| **Record Title Holder** | **Record Title Holder** |
| John M. Licursi, Trustee | Susan A. Licursi, Trustee |
| The John and Susan Licursi 2006 Trust | The John and Susan Licursi 2006 Trust |
| 12406 Rye St. | 12406 Rye St. |
| Studio City, CA 91604 | Studio City, CA 91604 |
| | |
| **Senior Secured Creditor** | **List of 20 Largest Creditors** |
| Mark J. Saladino | American Express Company |
| Los Angeles County Tax Collector | c/o CT Corporation System, Agent for Service of Process |
| 1401 East Willow St. | |
| Signal Hill, CA 90755 | 818 W. 7th Street |
| | Los Angeles, CA 90017 |
| | |
| **List of 20 Largest Creditors** | |
| Home Depot Credit Services | [No information available on CA Secretary of State's website regarding this entity's agent for service of process] |
| P.O. Box 6029 | |
| The Lakes, NV 88901-6029 | |
| | |
| **List of 20 Largest Creditors** | **List of 20 Largest Creditors** |
| Putnam Leasing Company I, LLC | MGC Mortgage, Inc. |
| c/o Marshall F. Goldberg | c/o CT Corporation System, Agent for Service of Process |
| 21700 Oxnard Street, Suite 430 | |
| Woodland Hills, CA 91367 | 818 W. 7th Street |
| | Los Angeles, CA 90017 |
| | |
| **List of 20 Largest Creditors** | Civil Process Clerk |
| Internal Revenue Service | U.S. Attorney's Office |
| P.O. Box 7346 | Central District of California |
| Philadelphia, PA 19101-7346 | (for Internal Revenue Service) |
| | Federal Building, Room 7516 |
| | 300 North Los Angeles Street |
| | Los Angeles, CA 90012 |
| | |
| Attorney General of the United States | **List of 20 Largest Creditors** |
| (for Internal Revenue Service) | Employment Development Department |
| U.S. Department of Justice | P.O. Box 826880, MIC 83 |
| Ben Franklin Station | Sacramento, CA 94280-0001 |
| P.O. Box 683 | |
| Washington, DC 20044 | |
| | |
| **U.S. Bankruptcy Judge** | |
| Hon. Geraldine Mund | |
| U.S. Bankruptcy Court | |
| 21041 Burbank Blvd., Suite 342 | |
| Woodland Hills, CA 91367 | |

1

**SERVICE BY CERTIFIED MAIL**[3]

2

3

**Junior Secured Creditor
and List of 20 Largest Creditors**
California Bank & Trust
c/o Corporation Service Company dba CSC –
Lawyers' Incorporating Service, Agent for
Service of Process
2730 Gateway Oaks Dr., Suite 100
Sacramento, CA 95833

4

5

6

7

8

**List of 20 Largest Creditors**
Bank of America, National Association
c/o CT Corporation System, Agent for Service
of Process
818 W. 7th Street
Los Angeles, CA 90017

**List of 20 Largest Creditors**
JPMorgan Chase Bank
c/o CT Corporation System, Agent for Service
of Process
818 W. 7th Street
Los Angeles, CA 90017

9

10

11

12

**List of 20 Largest Creditors**
Bank of America, National Association
c/o CT Corporation System, Agent for Service
of Process
818 W. 7th Street
Los Angeles, CA 90017

**List of 20 Largest Creditors**
JPMorgan Chase Bank
c/o CT Corporation System, Agent for Service
of Process
818 W. 7th Street
Los Angeles, CA 90017

13

14

15

16

**List of 20 Largest Creditors**
Citibank – Sears Credit Cards
Attn: Officer authorized to accept service of
process
P.O. Box 688957
Des Moines, IA 50368-8957

[No information available on CA Secretary of
State's website regarding this entity's agent for
service of process]

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] All parties served by Certified Mail received the Notice of Motion, Motion, and Declaration of
Randy McDougal, without exhibits, and the Notice of Availability of Documents.