FILED & ENTERED

OCT 02 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Remy    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re:

John Michael Licursi
Susan Annette Licursi

Debtor(s).

Case No.: 1:10-bk-26168-GM

CHAPTER 11

**PARTIAL RULING ON DEBTORS' MOTION OBJECTING TO SECURED CLAIM OF CALIFORNIA BANK & TRUST**

Date:    September 9, 2014
Time:    10:00 a.m.
Courtroom:  303

On December 28, 2010 John and Susan Licursi filed this case under chapter 11 of the Bankruptcy Code. At that time they had three legal relationships with California Bank & Trust (CB&T): a guaranty for their business Spectrum Glass & Aluminum, Inc. (which resulted in actions in the superior court against Spectrum Glass & Aluminum, Inc. and the Licursis on the note and guaranty as well as an action in the superior court against Spectrum Glass & Mirror, Inc. seeking stock, etc.), a second deed of trust on Debtors' business property on Burbank Blvd., and a first deed of trust on a piece of vacant land in Malibu.

-1-

The Burbank Blvd. property was sold during the bankruptcy with no payment to CB&T on its second trust deed.  Because the deeds of trust were not cross-collateralized, the sale of this property resulted in an unsecured claim for the deficiency on the Burbank Blvd. loan.

The remaining secured claim is due to a first trust deed on vacant land in Malibu.  Because the various loans were not cross-collateralized, the Debtors agree that while they owe attorneys' fees and interest on the claim secured by the Malibu property, they assert that they do not owe such monies as to work done on the Burbank Blvd. portion of the claim or the superior court action on the guaranty.

CB&T does not dispute that it is not entitled to have a lien on Malibu for fees and interest arising from the Burbank Blvd. portion of the claim or for the superior court action or the adversary proceedings that took place or due to its sanctions motion.

The Debtors are now trying to refinance the Malibu property, pay CB&T off, and move forward to confirm a plan.  The Debtors argue that the CB&T proof of claim is a "moving target" and that this causes a problem in obtaining the financing.  As of May 1, 2014, CB&T was seeking a total of $341,594.08, of which $175,407.58 was for principal, $92,533.17 was legal fees through April 30, 2014, $38,965.98 was interest and another $26,910.54 was default interest.  [According to CB&T, the figures for interest and attorneys' fees have increased and as of August 25, 2014 they are as follows: interest of $42,852.98; default interest of $26,910.54; legal fees of $101,795.88. (dkt. 385)]  The Debtors assert that the total fees attributable exclusively to Malibu are no more than $56,683.84 as of August 25, 2014.[1]

---

[1] On the objection to claim, the Debtors asserted a maximum of $46,123.69 as of May 1, 2014. (dkt. 352). Thereafter in late September they provided the Court with an amended spreadsheet that took into account the

In support of the objection, the Debtors prepared a detailed analysis of the fee request and ask for a credit against CB&T's claim in the amount of at least $27,450 ($22,500 for Ms. Licursi's time and $4,950 for counsel's time).  Thus Debtors assert that the amount of fees payable to CB&T as of August 25, 2014 should be $29,233.84.

Debtors also recalculate the default and they dispute the late charges in that the account was current as of the petition date and post-petition late charges may not be allowable.  As to foreclosure fees, the Debtors assert that the NOD was filed erroneously by CB&T and that some appraisal fees are not substantiated.  (dkt. 352, ex. G).

In response, Buchalter Neimer (BN), CB&T's attorney, presented a chart showing that it had actually adjusted the amounts and thus had reduced its fees from the total of $209,658 to the amount that it is requesting of $101,795.88 (dkt. 385, p. 5).  The amounts removed covered litigation fees of $60,759 related to the state court actions against the Debtors' prior and present businesses; $25,814.50 incurred in defending the Debtors' adversary proceedings; $14,875.88 in seeking sanctions against the Debtors' third bankruptcy counsel; and $4,854.25 for fees attributable to the disposition of the Debtors' Burbank and Studio City properties.

The parties agree that the loan documents permit CB&T to receive its fees and costs:

> **Attorneys' Fees; Expenses.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law. [From the Note]

---

total up to August 25, 2014.  This amended spreadsheet has not been actually filed and is not on the docket.  The amounts through August 25, 2014 are set forth on the attached exhibits.

> **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law. [From the Deed of Trust]

The background and hostility of this case are important.  On April 29, 2011, CB&T filed claim #16 for a total of $649,155.82.  This was stated to be completely secured, although it was shown as two separate loans [one in the principal amount of $360,263.96 (the business loan) and the other with a principal of $175,407.58 to the John and Susan Licursi 2005 Trust Dated April 13, 1005 (the Malibu loan)].[2]  On September 13, 2011 the Court entered an order granting the Debtors' motion to sell the Burbank Blvd. property free and clear of liens. (doc. #61).  Zions Bank, the holder of the first trust deed on Burbank Blvd., received payment, but little or nothing was left for CB&T's second trust deed.

CB&T did not amend its claim and on March 14, 2013 the Debtors filed their objection.   In response, on May 13, 2013 CB&T filed claim #22-1 (amending claim 16-1), which it immediately amended with claim #22-2.  It divided the claim between secured and unsecured portions and asserted a secured claim against Malibu in the

---

[2] On August 1, 2014 CB&T filed its amended claim #16-2 to remove the loan numbers.

amount of $180,728.41 as of the date that the case was filed.  Debtors objected on June 17, 2014 and on August 1, 2014 CB&T filed claim #22-3 in order to remove the loan numbers.

To assist the Court, Buchalter Nemer (BN), attorney for CB&T, prepared a chart setting forth each charge and categorizing them.  Ms. Licursi went through these in careful detail and then Greenberg and Bass, counsel for the Debtors, presented the comments and proposed allocations to BN.  At the request of the Court, this was combined into a single chart (one chart for each billing code – A3481-0190 and A3481-0062) and presented to the Court at the hearing on September 9.  The excel spreadsheets were also sent to the Court and on about September 24 the Court received revised spreadsheets from the Debtors, highlighting areas of disagreement.[3]  From these the Court prepared a determination on a charge-by-charge basis.  The final charts prepared by the Court are attached hereto, though a few columns have been hidden so that they could be printed out without the excessive use of paper.

Among the arguments of the Debtors is that the total fee amount is not reasonable.  Collier on Bankruptcy sums up the standard for determining reasonableness as follows:

> The courts have been fairly uniform in holding that they have inherent power to determine the reasonableness of the amount of any attorney's fees to be allowed under section 506(b) and that reasonableness is to be determined in accordance with federal standards. The bankruptcy courts will generally require the party seeking allowance of attorney's fees to carry the burden of demonstrating reasonableness by providing a detailed description of the services rendered, supporting documentation, or other evidence prior to making a determination on an application for payment. The bankruptcy court may also inquire into whether the services rendered are within the scope of the services covered by the fee provision of the applicable agreement, and whether the rendition of the services in question was reasonably required under the circumstances.  (Citations omitted)

---

[3] As previously noted, the spreadsheets revised by the Debtors have not been filed or entered on the docket.

-5-

4 Collier on Bankruptcy 16th, ¶506.04(d).

There is no dispute that CB&T has met the physical requirements to receive its claimed fees: it has an allowed secured claim, though some of the amounts are disputed; the security agreement provides for the requested fees; and CB&T is oversecured. *CityBank v. Udhus (In re Udhus),* 218 B.R. 513, 517 (9th Cir. BAP 1998). As to the fourth element – reasonableness – there is an undisputed descriptive billing and the services rendered were within the scope of the provision that allows them. As an active secured creditor, it may not always have been reasonably required for CB&T to attend §341(a) hearings and status conferences, but certainly they would need to carefully monitor this case and review and object to the disclosure statement. Because of the actions of the Licursis in this bankruptcy, it was also reasonable for CB&T to be proactive. As noted in prior hearings and rulings, the Court itself has serious questions of the good faith of the Debtors in their plan proposals. The Malibu property is vacant, largely isolated land that they want to hold onto for possible development. They initially tried to convince the Court that it was to be used for agricultural purposes, but this was a ruse. Their most recent Plan would pay only 3.5% to unsecured creditors while they maintain their more than comfortable standard of living, which includes keeping a boat, RV, ATV, motorcycle, and a Mexico vacation home with no equity. For the Court it has been like pulling teeth to get the Debtors to act realistically to create a confirmable plan and we are not there yet.

And while much of the concern of CB&T is to protect its unsecured claim, it also has a legitimate interest in making sure that the Debtors act responsibly in paying off its secured claim. Further, there is no income from the Malibu property and while there is equity for the estate, this only has value if it can be realized. In reviewing the motion for

relief from the automatic stay, the issue under §362(d)(2) is whether the property is necessary to an effective reorganization. Thus the Court continued the motion for relief from stay, trailing it with the status conferences and various attempts at a disclosure statement. Had there been no unsecured claim, CB&T would have been entitled to 100% of its fees for much of this continued work. But because of the existence of an unsecured claim, the 50% allocation benefits the Debtors and is not unfair to CB&T, who – given the nature of this relationship and that level of mutual hostility - would certainly have been just as active if there were no secured claim.

The Debtors argue that the fees are simply too high given the amount of the principal due on the secured claim, which is about $180,000+. This has not been a simple case. And while CB&T has not been willing to compromise, it has not done unnecessary work. Thus, the amount of fees is what they are and, as modified by the Court, they are reasonable under the circumstances of this case.

**Fee Calculation**

Attached hereto are the charts showing the fees claimed by CB&T for the work of BN, the grounds of objections by the Debtors, their proposed allocation, the Court's comments and amounts awarded.[4] In general, I determined that, according to the charts, the following will be allowed as part of the secured claim:

Account A3481-0062 - $17,121.96

Account A3481-0190 - $63,876.00

Total - $80,997.94

---

[4] The BN billing codes are set forth on doc. 385, p. 5; the Debtors' color/number codes are on doc. 352, p.108. A summary of the category by category breakdown is on doc. 386, p.42. I attempted to change the Excel spreadsheet to include the revisions by the Debtors presented to the Court on about 9/24. But I did not copy the comments into my spreadsheet, just the percentages and the amounts. I did, however, read and consider the comments.

I tried to be consistent in dividing fees between those concerning the CB&T unsecured claim and those pertaining to its secured claim on the Malibu property. As time went on, the work on Malibu took center stage, although the issues as a general unsecured creditor still remained. I also tried to take into account the comments of the Debtors and adjusted accordingly when I agreed with them. The chart is made more difficult to read because of the allocation into subparts. Thus the Debtors' proposed allocation may be on a different line from that of the Court. But these were all taken into consideration.

Determining fees is more of an art than of a science. For that reason it is especially difficult to be exact. The above amounts are the best that I can do, having reviewed each and every entry and comment and having spent no less than fifteen hours in reviewing these.

**Requests for Setoffs**

As to Ms. Licursi's claim for $22,500 setoff for her "paralegal" work. I agree with the opposition filed by CB&T on dkt. 385, p. 9 that as a Debtor-in-Possession, it is her duty to review and object to the claim.

Mr. Goodman's request for fees, on the other hand, is allowable if the Debtors are the prevailing party on this objection to claim.

"No one factor should be considered in determining the prevailing party for the purpose of attorney fees. The party that is awarded a money judgment in a lawsuit is not necessarily the successful or prevailing party." *See In re Wilson,* 2007 Bankr. Lexis 891 (Bankr. Mo 2007). The Supreme Court notes that Black's Law Dictionary defines prevailing party as a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Buckhannon Bd. and Care Home, Inc. v. W. Virginia*

*Dep't of Health & Human Res.,* 532 U.S. 598, 603 (2001).

In this case, the Debtors are deemed to be the prevailing party as to the amount of fees that will be allowed on the secured claim. Given the amount requested as of June 17, 2014 ($4,950) it is not efficient to require detailed billings.[5] The Court is sure that by mid- June the Debtors' counsel spent at least ten hours on this work and that the hourly rate of $495 is well within the normal range for someone of Mr. Goodman's skill and experience. Some of the work concerns getting papers in proper legal form and preparing the objection. Although I am not completely sustaining the objection, the fact that CB&T took so long to divide its proof of claim between secured and unsecured portions and to similarly divide its request for fees justified Counsel's involvement.

Thus, the Court will offset the amount of fees by $4,950, leaving the balance of $76,047.94 as of August 25, 2014.

**Adequate Protection Payments**

Per the opposition, the Debtors are attempting to apply adequate protection payments to the loan balance, although these were returned. According to the Debtors' chart received by the Court on about September 24, 2014, at least one payment was never returned. The parties obviously need to work out an accounting on this.

CB&T asserts that it does not need to accept adequate protection payments because they were never ordered by the Court. This is incorrect. Although this is not a single asset real estate case and thus §362(d)(3) does not apply, there is no reason to hold that a Debtor cannot voluntarily make monthly payments to keep interest from accruing. Thus, the amount of the tendered payments cannot reduce the principal, but

---

[5] The Court is aware that on p.9 of dkt. 352, the amount attributed to Counsel is 10 hours, whereas in his declaration on p. 16 of dkt. 352 he states that he has worked on this for 6 hours.

there can be a credit as to the accruing interest and post-petition late charges.

**Interest**

The chart attached to the Objection to Claim (dkt. 352, p. 98) does not include non-default interest as a disputed item. If it is disputed, the Court needs information as to the nature of the dispute.

**Default Interest**

If I correctly understand Exhibit G to the objection to claim (dkt. 352, p. 98), the Debtors assert that default interest is to be calculated at $24 per day. This would mean that the amount of default interest from May 13, 2013 until June, 17, 2014 (the date that the objection was filed, which is a total of 400 days) would be $9,600. I cannot tell what CB&T is asserting. Further, I am not sure whether there is an issue as to the effect of refinance as a part of confirmation on the default rate of interest. The parties are to provide the Court with a clear statement of the dispute and the basis of their respective positions.

**Late Charges**

Debtors assert that they paid all prepetition late charges. If CB&T disputes this, Debtors are to provide the Court with an accounting showing the payments. As to post-petition late charges, since Debtors assert that they may not be allowable under bankruptcy rules, please provide the Court with some points and authorities on this issue.

**Foreclosure Fees**

Debtors question the prepetition foreclosure fees on three grounds: that the NOD was filed in error, that the account was cured although CB&T later refunded the

payments, and that the account was current at the time that the bankruptcy was filed. CB&T is to respond to these statements.

**Appraisal Fees**

Debtors would like substantiation of the appraisals billed for 1/4/11 and 8/4/11. CB&T is to provide that.

**Sanctions Award**

On March 26, 2014 the Court ordered Debtors' prior counsel to pay CB&T the amount of $5,000 as a sanction for instituting an adversary against CB&T for violation of the automatic stay (dkt. ##341, 342). CB&T incurred fees and costs of $46,000+ in defending that adversary proceeding. Since CB&T has removed any claim for fees as to the adversary complaint, the sanctions award cannot be offset against the secured claim for fees.

## **CONCLUSION**

The amount of attorneys' fees to be added to the secured claim as of August 25, 2014 is $76,047.94.

As noted above, the respective parties are to provide the Court with specifics as to disputes on interest, default interest, foreclosure fees, and appraisal fees. This is to be filed no later than October 8, with any response due by October 13. Further, Mr.

Goodman is to file a copy of the chart and comments that he provided to the Court on about September 24, 2014.

###

Date: October 2, 2014

Geraldine Mund
United States Bankruptcy Judge